NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| SHORE OPTIONS INC. d/b/a REMAX, | : | |
| Plaintiff, | : | Civil No. 20-03835 (RBK/JS) |
| v. | : | **OPINION** |
| GREAT AMERICAN INSURANCE GROUP AND ABC CORPORATIONS 1–5, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff's Motion to Remand (Doc. 4) and Defendant's Motion to Dismiss (Doc. 5).

**I.   Background**

This action arises out of an insurance coverage dispute. Plaintiff Shore Options, Inc. d/b/a Remax ("Shore Options") is a real estate office selling residential real estate in New Jersey. (Doc. 1-1, "Compl." at 1[1].) On December 10, 2019, a Shore Options agent met with an individual, A. Grey LeCuyer, at one of Shore Options' properties. (*Id.* at 2.) The property had a lockbox on the door. (*Id.*) The Shore Options agent allowed Mr. LeCuyer access to the property and escorted him around the first floor. (Doc. 1-1, Ex. B, "LeCuyer Compl. at 3.) The agent then escorted Mr. LeCuyer to the basement door. (*Id.*) Mr. LeCuyer began descending the stairs, however, when Mr. LeCuyer stepped onto the last step, the step snapped in half and collapsed. (*Id.*) Mr. LeCuyer was

---

[1] Because the paragraph numbers in the Complaint are repeated, the Court instead refers to page numbers for clarity.

1

injured. (*Id.*) Soon after, Mr. LeCuyer filed suit in New Jersey state court against Shore Options, in a case captioned *LeCuyer v. M & T Bank, et al.* Mr. LeCuyer claims that his damages include "severe and permanent personal injuries, including . . . a fracture of the right fifth metatarsal with delayed and improper healing," "great mental and physical pain and suffering," the possibility of needing to "expend large sums of money for medical care related to his injuries," as well as "substantial wage loss." (*Id.* at 8.)

Upon receiving notice of the action in *LeCuyer*, Shore Options sought coverage for the claim from its insurer, Defendant Great American Insurance Group ("Great American"), pursuant to their Real Estate Professional Errors and Omissions Insurance Policy (Doc. 1-1, Ex. A, "the Policy"). The Policy provides coverage for the following:

> [A]ll sums . . . that the Insured becomes legally obligated to pay . . . as a result of a Claim . . . by reason of an act or omission, including Personal Injury, in the performance of Real Estate Professional Services by an Insured, including any Drone Claims, Lock Box Claims or Open House Claims[.]

(*Id.* at 1.) The Policy defines "Personal Injury" as "injury other than Bodily Injury arising out of one or more [enumerated] offenses by reason of an act or omission by an Insured in the performance of Real Estate Professional Services." (*Id.* at 4.) Thus, the Policy excludes Bodily Injury from coverage. The Policy defines "Bodily Injury" as "physical injury . . . sustained by any person" including "mental illness, mental anguish, emotional distress, pain, suffering, or shock[.]" (*Id.* at 1.)

The Policy includes three exceptions to the exclusion of "Bodily Injury" claims: "Drone Claims," "Lockbox Claims," and "Open House Claims." For purposes of these motions, the only relevant exception is the exception for lockbox claims. This exception applies to "any Claim arising out of an Insured's distribution, maintenance, operation[,] or use of a keyless entry system

2

or similar device used to gain access when showing properties[.]" (*Id.* at 3.) Such claims are not excluded from the Policy.

Great American denied Shore Options' request for coverage, citing the Policy exclusions. Shore Options consequently filed this suit in the Superior Court of New Jersey, seeking a declaratory judgment stating that Great American is obligated to provide coverage for the claims asserted by Mr. LeCuyer in *LeCuyer v. M & T Bank, et al*. Great American removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332(c). (*See* Doc. 1.) Shore Options subsequently filed a Motion to Remand. (Doc. 4, "Mot. to Remand.") Great American filed an Opposition (Doc. 6, "Opp. to Remand"), and Shore Options filed a Reply in Support of its Motion to Remand (Doc. 11, "Remand Reply.") With the Remand Motion pending, Great American additionally filed a Motion to Dismiss. (Doc. 5, "Mot. to Dismiss.") Shore Options filed an Opposition (Doc. 10, "Opp. to Mot. to Dismiss"), and Great American filed a Reply in Support of its Motion to Dismiss (Doc. 14, "Mot. to Dismiss Reply.")

## II.  Legal Standard

### A.  Motion to Remand

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. *Id.* A case that is removed shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties. *See* 28 U.S.C. § 1332(a). For purposes of diversity jurisdiction, "a corporation shall be

3

deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332.

The Third Circuit has provided a "roadmap" for evaluating whether a case removed from state court should be remanded because the amount in controversy does not exceed $75,000. *See Frederico v. Home Depot*, 507 F.3d 188, 196 (3d Cir. 2007). First, if the parties dispute jurisdictional facts, the party carrying the burden of proof must establish federal jurisdiction by a preponderance of the evidence. *Id.* at 194 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)). Second, if jurisdictional facts are not in dispute, or the court is satisfied with the sufficiency of the jurisdictional proof, the analysis turns to whether the jurisdictional amount is met with "legal certainty." *Frederico*, 507 F.3d at 196.

The legal certainty test has two alternative strands. *Id.* If the complaint "specifically avers that the amount sought is less than the jurisdictional minimum," a defendant "seeking removal must prove to a legal certainty that [the] plaintiff can recover the jurisdictional amount." *Id.* at 196–97 (relying on *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006)). A plaintiff is entitled to this deferential standard only if the complaint "specifically (and not impliedly) and precisely (and not inferentially) states that the amount sought" shall not exceed the jurisdictional minimum. *Id.* at 196. Alternatively, if the "plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," then "the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Id.* at 197 (emphasis in original) (relying on *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir. 2004)).

**B. Motion to Dismiss**

When deciding a motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*,

632 F.3d 822, 835 (3d Cir. 2011). The court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether plaintiff will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

In deciding a motion to dismiss, the court may rely on "the complaint, attached exhibits, and matters of public record" without converting the motion to one of summary judgment. *Sands*

*v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Accordingly, in adjudicating this Motion, the Court will rely on the Complaint and its attached exhibits: (1) the insurance policy at-issue and (2) the Complaint in *LeCuyer v. M & T Bank, et al.*

### III. Discussion

#### A. Motion to Remand

Shore Options moves to remand the case to state court, arguing that Great American has failed to meet the diversity requirements of 28 U.S.C. § 1332(a) for two reasons: (1) the amount in controversy standard has not been met, and (2) the parties are not diverse. The Court addresses each argument in turn.

##### 1. Amount in Controversy

First, Shore Options argues that "Great American is unable to meet the amount in controversy requirement." (Mot. to Remand at 6.) Although declaratory judgment actions do not directly involve the award of monetary damages, "it is well established that the amount in controversy [in such actions] is measured by the value of the object of the litigation." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397–98 (3d Cir. 2016); *see also* 14AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3708 (4th ed. 2016) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared, such as a right to indemnification or a duty to defend."). Here, Shore Options seeks a declaratory judgment stating that Great American is obligated to provide coverage for Mr. LeCuyer's claims asserted against Shore Options. Accordingly, the value of the object of this litigation is the value of Mr. LeCuyer's claim in *LeCuyer v. M & T Bank, et al.*

Neither Mr. LeCuyer nor Shore Options has limited damages below the jurisdictional limit—therefore this case may only be remanded if it appears to a "legal certainty" that Mr.

LeCuyer could not recover the jurisdictional amount for his personal injury claim. *Frederico*, 507 F.3d at 197. This Court has on many occasions held that personal injury cases alleging "severe and permanent" injuries will be removable absent proof to a "legal certainty" that the amount in controversy cannot exceed $75,000. *See, e.g.*, *Briggs v. Target Corp.*, No. 14-7165, 2015 WL 1145127, at *4 (D.N.J. Mar. 13, 2015); *Clark v. J.C. Penny*, No. 08–4083, 2009 WL 1564175, at *3–4 (D.N.J. June 1, 2009); *Fields v. Zubkov*, No. 08–2016, 2008 WL 4447098, at *4 (D.N.J. Sept. 26, 2008). Indeed, "most removed personal injury cases will likely remain in federal court even if they involve a very minor injury—unless the plaintiff limits her damages below the jurisdictional limit." *Fields*, 2008 WL 4447098, at *4. Courts will seldom remand a personal injury claim absent a waiver by the plaintiff capping damages at $75,000. *Avant v. J.C. Penny*, No. 07–1997, 2007 WL 1791621, at *2 (D.N.J. June 19, 2007).

Here, Mr. LeCuyer seeks damages for "severe and permanent personal injuries, including . . . a fracture of the right fifth metatarsal with delayed and improper healing," "great mental and physical pain and suffering," the possibility of needing to "expend large sums of money for medical care related to his injuries," as well as "substantial wage loss." (LeCuyer Compl. at 8.) Based on the totality of the alleged injuries, as well as the failure to cap damages at $75,000, the Court cannot say to a legal certainty that Mr. LeCuyer could not recover $75,000. Because the value of the declaratory relief is measured by the value of the underlying claim, the Court finds that the amount in controversy requirement has been satisfied.

Shore Options argues that because Mr. LeCuyer's initial settlement demand was $45,000 —less than the jurisdictional threshold—the case must be remanded. (Mot. to Remand at 6.) However, a settlement offer "is not the proper amount to take into consideration in calculating the amount in controversy." *Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 199 (D.N.J. 2006).

Indeed, the offer has no bearing on whether a reasonable jury could award damages in excess of that amount. *See Fusco v. Nationwide Ins. Co.*, No. CIV.A. 95-5760, 1995 WL 709921, at *2 (E.D. Pa. Nov. 22, 1995) ("The amount in controversy refers to the value of the claim being litigated, not to amounts offered in settlement") (internal citation omitted). Thus, Shore Options' reliance on Mr. LeCuyer's $45,000 settlement offer is misplaced. The Court finds that the amount in controversy requirement is satisfied.

### 2. Diversity of Citizenship

Second, Shore Options argues that there is no diversity of citizenship because 28 U.S.C. § 1332(c)(1) applies. (Mot. to Remand at 6.) Under this Section, "in any direct action against the insurer of a policy of contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1).

Shore Options argues that because Great American is an insurance company, it is therefore deemed to be a citizen of the state of its insured. This assertion is incorrect. Section 1332(c) only applies in an action by a *third party* against an insurer. Here, this is a coverage action filed by an *insured plaintiff* against its insurer. In fact, this Circuit has *expressly* rejected Shore Options' argument, noting that this exact "contention is meritless." *McGlinchey v. Hartford Acc. & Indem. Co.*, 866 F.2d 651, 652–53 (3d Cir. 1989) (citing *Myers v. State Farm Ins. Co.,* 842 F.2d 705, 707 (3d Cir.1988)). Accordingly, the Court rejects this argument. Because Shore Options does not otherwise challenge the diversity of citizenship between the parties, the Court finds that this requirement has been satisfied.

In sum, the Court finds that there is diversity of citizenship and the amount in controversy exceeds $75,000. Accordingly, the Court may exercise jurisdiction under Section 1332(c), and the Motion to Remand is **denied.**

### B. Motion to Dismiss

#### 1. Motion to Dismiss the Request for Declaratory Judgment

Great American argues that the case should be dismissed because a plain reading of the Policy's terms establishes that Mr. LeCuyer's Claim is not covered. (Mot. to Dismiss at 1.) As an initial matter, the Court notes that, for purposes of this Motion, the parties agree on the facts of the case. The parties only dispute the legal consequences of the words of the Policy. Interpretation of an insurance policy is a question of law. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016). Accordingly, this issue may be determined at the motion to dismiss phase.

A court exercising diversity jurisdiction over an insurance dispute must apply state substantive law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 64 (1938). The parties in the present case submit that New Jersey law applies. Under New Jersey law, an insurance policy is "interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mat. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). Where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). Where the terms of the policy are ambiguous, however, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). However, ambiguities will not be forced into an insurance policy nor will the words of an insurance policy

be artfully construed to include a type of coverage outside the scope and nature of the policy in question. *Id.*

Exclusions within an insurance policy are narrowly interpreted and construed in accord with the objectively reasonable expectations of the insured. *Princeton Ins. Co. v. Chunmuang,* 151 N.J. 80, 95, 698 A.2d 9 (1997). Although exclusionary clauses are construed narrowly, they will be applied where they are "specific, plain, clear, prominent, and not contrary to public policy." *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, A-1647-13T4, 2015 WL 248490, at *4 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (citing *Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super. Ct. App. Div. 2010)).

Great American contends that it is not required to provide coverage to Shore Options because the "Bodily Injury" exclusion applies to Mr. LeCuyer's Claim. (Mot. to Dismiss at 6.) By its plain terms, the Bodily Injury exclusion applies to "any Claim . . . based on or arising out of Bodily Injury." (Policy at 6.) "Bodily Injury" is defined as a "physical injury . . . sustained by any person" as well as "mental illness, mental anguish, emotional distress, pain, suffering[,] or shock sustained by any person, whether or not resulting from physical injury . . . of such person." (*Id.* at 1.)

There is no doubt that Mr. LeCuyer's Complaint falls squarely within the Bodily Injury exclusion. Mr. LeCuyer alleges that he was touring Shore Options' property and stepped on a faulty basement stair. (LeCuyer Compl. at 3.) When the stair broke, Mr. LeCuyer was injured and suffered "a fracture of the right fifth metatarsal, with delayed and improper healing," causing him to "undergo great mental and physical pain and suffering." (*Id.* at 7.) By a reading of the plain language of the Policy, Mr. LeCuyer's ailments amount to Bodily Injury as defined and thus fit squarely within the coverage exclusion.

Therefore, the only question is whether an exception to the exclusion applies that would allow Shore Options to nevertheless receive coverage. Although there are three exceptions to the Bodily Injury exclusion, only one exception is even potentially applicable—the lockbox exception. Under this exception, "Claim[s] arising out of an Insured's distribution, maintenance, operation[,] or use of a keyless entry system or similar device used to gain access when showing properties" may still be covered by Great American. (Policy at 3.) Shore Options contends that "[a]t the time of the accident that is [the] subject of the Lecuyer [sic] Complaint, the property . . . had a lock[]box on it." (Compl. at 2.) Thus, Shore Options alleges that the Policy requires Great American to provide coverage because Mr. LeCuyer's claim arises out of its operation or use of a lockbox. (Opp. to Mot. to Dismiss. at 3.)

For purposes of this Motion, both parties agree that there was a lockbox on the door of the property at the time of the accident. Therefore, the only issue to determine is whether the Bodily Injury arose from the use of the lockbox. The Court finds that nothing in Mr. LeCuyer's Complaint or Shore Options' Complaint indicates that Mr. LeCuyer's bodily injury arose out of his use or operation of the lockbox system. Mr. LeCuyer's Complaint never mentions any use of a lockbox or keyless entry system. (*See generally* LeCuyer Compl.) Moreover, his Complaint alleges that it was Shore Options' agent who gave him access to the property. (*Id.* at 3.) Further, Mr. LeCuyer's injuries occurred well after he gained access to the property. (*Id.*) Finally, there is no indication that there is any causal connection between the lockbox and Mr. LeCuyer's injury. Shore Options does not allege any facts in its Complaint to refute these findings. Thus, the Court finds that Mr. LeCuyer's physical and mental injuries are entirely unrelated to any use or operation of the lockbox on the property, and the Lockbox Exception does not apply.

Accordingly, the Court finds that Mr. LeCuyer's Claim is outside the scope of the Policy. Therefore, Great American is not obligated or required to provide coverage under the terms of the Policy for the claim arising in *LeCuyer v. M&T Bank, et al*. Thus, the Court **grants** the Motion to Dismiss the claims for declaratory relief.

### 2. Motion to Dismiss the Bad Faith Claim

Great American also moves to dismiss Shore Options' bad faith claim. (Mot. to Dismiss at 9.) In order to state a claim for bad faith denial of insurance coverage, a plaintiff must allege the following: (1) the insurer lacked a reasonable basis for denying benefits, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. *Pickett v. Lloyd's*, 621 A.2d 445, 445 (N.J. 1993). However, if "a claim is fairly debatable, no liability in tort will arise." *Id.* at 453 (internal citation and quotation omitted). Moreover, there can be no bad faith claim for denial of coverage if the insurer was correct as a matter of law in denying coverage. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Because the Court has found that Great American was not obligated to provide coverage under the terms of the Policy, the bad faith claim similarly fails. The Court **grants** the Motion to Dismiss this claim.

## IV.   Conclusion

For the reasons contained herein, the Motion to Remand (Doc. 4) is **denied** and the Motion to Dismiss (Doc. 5) is **granted**. An accompanying Order shall issue.


Dated: 09/21/2020                                                  /s/ Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge